# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10519

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2014

Lyle W. Cayce
Clerk

EAGLE SUSPENSIONS, INCORPORATED,

Plaintiff – Appellee

v.

HELLMANN WORLDWIDE LOGISTICS, INCORPORATED,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-611

Before DAVIS, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:*

This case involves a contract for the carriage of two industrial presses to Oklahoma from Mexico. Eagle originally purchased the presses for use in Oklahoma, and Hellmann is a freight forwarder who was hired to arrange carriage. As both parties agree, the presses never left Mexico and were never delivered to Eagle. After a jury trial, Hellmann was found liable to Eagle for breach of contract and breach of fiduciary duty under Texas law. On appeal, Hellmann asks us to vacate the district court's judgment and remand for a new

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-10519

trial based on one challenge to an evidentiary ruling and three purported errors in the jury instructions.

First, Hellmann argues that the district court violated Rule 411 of the Federal Rules of Evidence by allowing questions during trial related to Hellmann's purchase of insurance. Second, Hellmann argues that the jury instructions included claims under Texas law that are preempted under federal common law. Third, and in the alternative to its preemption argument, Hellmann argues that the jury instructions misstated the relevant rule of Texas law governing the foreseeability of consequential damages. Fourth, Hellmann argues that the jury instructions misallocated the burden of proof for demonstrating a breach of fiduciary duty under Texas law.

For the reasons set forth below, we reject each of Hellmann's four arguments and affirm the district court's judgment.

I.

On February 29, 2012, Eagle filed a complaint with the district court containing three distinct claims against Hellmann under federal law and Texas law. Eagle claimed first that, by failing to deliver the industrial presses, Hellmann had violated a rule of federal common law governing "non-delivery of goods" in cases involving cross-border shipping. This rule of federal common law, according to Eagle's position at the time (and Hellmann's position now), operates to extend "the principles and framework set out in the Carmack Amendment to the Interstate Commerce Act" to cover cross-border shipments that are not actually covered by the Carmack Amendment's literal text.[1]

---

[1] Neither party ever contended during the proceedings before the district court that the present case—a shipment by truck originating in Mexico, as to which the loss also occurred in Mexico—falls within the literal scope of the Carmack Amendment. *See* 49 U.S.C. § 14706 (limiting its effects to "loss or injury" caused with respect to the shipment of property "in the United States or from a place in the United States to a place in an adjacent foreign country"). We therefore assume without deciding that the present case does not fall under

No. 13-10519

Second, Eagle claimed that Hellmann had committed a breach of contract under Texas law. Third, Eagle claimed that Hellmann had breached a fiduciary duty arising under Texas law based on the parties' agency relationship.

Hellmann filed its original answer on April 4, 2012. The answer denied a number of Eagle's specific allegations and raised several defenses. But Hellmann's answer did not raise any defenses related to federal preemption. Nor did Hellmann make any mention of the applicable law in its original answer.

Hellmann did not file a motion to dismiss in this case. On August 31, 2012, both Hellmann and Eagle filed motions for summary judgment, at which point the applicable law became one of the central questions in the lawsuit. Initially, Hellmann argued in its motion for summary judgment that federal law was inapplicable because, in Hellmann's view, the literal text of the Carmack Amendment does not cover shipments originating in a foreign country. Instead, Hellmann argued, Florida law should apply under Texas's choice-of-law rules. Eagle, by contrast, argued in its own motion for summary judgment that federal common law should apply to Eagle's claim for non-delivery, whereas Texas law should apply to Eagle's claims for breach of contract and breach of fiduciary duties. Finally, in Hellmann's response to Eagle's motion, Hellmann argued—for the first time—that Eagle's claims for breach of contract and breach of fiduciary duty are preempted by the same body of federal common law invoked by Eagle in support of the federal claim for non-delivery.

---

49 U.S.C. § 14706 itself. In the present case, we need only address the parties' distinct disagreement regarding federal common law *based on* the Carmack Amendment, which was raised in the district court (though never ruled upon explicitly).

No. 13-10519

On December 20, 2012, the district court issued a one-page order denying both parties' motions for summary judgment because "these motions present[ed] genuine issues of material fact." The district court's brief order did not address any questions relating to the applicable law or federal preemption.

The parties prepared for trial. On January 25, 2013, Hellmann submitted a proposed jury charge reflecting the positions regarding federal common law and federal preemption that Hellmann had first adopted during the summary judgment briefing. That is, Hellmann's proposed jury charge lacked any jury instruction based on Texas law, and had no jury instruction at all pertaining to breach of contract or breach of fiduciary duty. Hellmann's proposed jury charge also stipulated "that [Hellmann] did not deliver to [Eagle] the two presses that are at issue in this case." Hellmann's proposed jury charge would therefore have submitted only issues relating to mitigation and the amount of damages for consideration by the jury. Subsequently, on February 6, 2013, the parties jointly filed a proposed pretrial order, in which Hellmann again repeated its argument that "principles of national uniformity . . . warrant[] the application of federal common law instead of state law" in this case. Finally, during a pretrial conference on February 8, 2013, the district court acknowledged the parties' dispute regarding federal preemption, but also explicitly postponed decision of that question. Indeed, there was no motion relevant to the question of federal preemption pending before the district court at the time of the pretrial conference.

The district court also heard argument at the pretrial conference regarding the application of Rule 411 of the Federal Rules of Evidence in the context of Hellmann's pending motion in limine. As Hellmann's attorney acknowledged during the pretrial conference, however, Hellmann itself intended to introduce evidence during trial to show "that Hellman offered Eagle the opportunity to get insurance" and that Eagle had not done so.

4

Trial began on March 18, 2013.  Prior to jury selection, the district court made its final ruling regarding the introduction of evidence relating to the parties' insurance under Rule 411.  As the district court explained, it would be inappropriate to "prohibit either side from raising the question of insurance in this case," given Hellmann's understanding that "one of the main issues in this case is who had the obligation to pay insurance when that was never apparently negotiated explicitly between the parties."  The district court therefore ruled that both parties would be permitted to introduce evidence relating to insurance.

On the second day of trial, on March 19, 2013, the district court distributed copies of the draft jury charge and verdict form to the parties.  At this time, the district court asked the parties to return those copies to the district court on the following day and "attach sheets of paper" or make "comments in the margin" expressing any objections, which the district court would then use to compose the final jury charge and verdict form.  The district court also assured the parties that they would have an opportunity to object formally on the record "after the jury has been charged," but emphasized that, "as a practical matter, [the parties'] ability to influence what's in the charge [wa]s really this informal process of commenting [in the draft's margins] rather than making [the] formal objections for the record."  The district court's draft copy of the jury charge and verdict form contained claims under Texas law for breach of contract and breach of fiduciary duty, as well as a claim entitled "Federal Common Law Non-Delivery."

On March 20, 2013, in accordance with the district court's instructions, both parties submitted their comments and proposed revisions to the district court.  The parties' submissions were formally docketed and preserved in the record.  Hellmann's submission included extensive comments in the margins of the draft jury charge and verdict form, as well as an additional twelve pages

of written comments and alternative verdict questions. Hellmann's submission made no mention, however, of federal preemption.

After the parties had made their closing arguments, the jury was charged in the afternoon on March 20, 2013. Like the draft version, the final verdict form also contained claims under Texas law for breach of contract and breach of fiduciary duty, as well as the claim for "Federal Common Law Non-Delivery." According to the final verdict form, consequential damages awarded pursuant to the claim for breach of contract must be "proximately caused by the defendant Hellmann's failure to comply with the agreement" under Texas law. The final verdict form also explained that, "[i]f Hellmann was Eagle's agent or if a relationship of trust and confidence existed between Eagle and Hellmann, then Hellmann must show it complied with its fiduciary duties."

The jury then left the courtroom to deliberate. At this time, out of the hearing of the jury, the district court asked to hear the parties' "objections, if any, to [the] instructions given to the jury" and invited the parties "to state more at greater length for the record what [the] objection is," in accordance with the procedure explained the previous day. In response to this invitation from the district court, Hellmann's lawyer replied: "Your Honor, let me state that all of the defendant's objections were contained in its comprehensive inserts and comments in the jury charge. We'll stand on that."

After concluding deliberations on March 20, 2013, the jury returned a verdict that found Hellmann liable for all three claims: breach of contract, breach of fiduciary duty, and non-delivery of goods.[2] The jury awarded

---

[2] The verdict form included a series of questions regarding liability and damages. The jury answered "yes" to the questions concerning the existence of a contract and Hellmann's failure to comply with the contract. The jury also answered "yes" to whether Eagle had proved that Hellmann was Eagle's agent and "no" to whether Hellmann had proved that it complied with its fiduciary duties to Eagle. Finally, the jury answered "yes" to whether Eagle

damages based on the industrial presses' replacement cost and Eagle's loss of use of the industrial presses. The jury also awarded damages for "Hellmann's failure to comply with its fiduciary duties" and for "malice, fraud, or gross negligence on the part of Hellmann."

The parties made no written motions for new trial or judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Hellmann did make an oral motion under Rule 50 based on the absence of evidence showing a principal-agent relationship and the absence of evidence showing gross negligence. The district court denied this motion from the bench, and this ruling has not been appealed.

## II.

Hellmann first challenges the district court's decision to permit the questioning of witnesses on matters relating to insurance. This court reviews a district court's evidentiary rulings for abuse of discretion.[3] A district court abuses its discretion by basing its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.[4] Even if there is an abuse of discretion, the district court's error is harmless and not reversible "unless the ruling affected substantial rights of the complaining party."[5]

In this case, the district court did not abuse its discretion by deciding to permit the questions regarding insurance. In its ruling from the bench prior to trial, the district court gave due consideration to Rule 411 of the Federal Rules of Evidence, which prohibits admission of evidence regarding liability insurance "to prove whether the person acted negligently or otherwise wrongfully." As the district court explained, Hellmann had itself argued that

---

sustained damages as a result of Hellmann's failure to deliver the presses to their destination.

[3] *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012).

[4] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

[5] *Id.*

No. 13-10519

"one of the main issues in this case is who had the obligation to pay insurance when that was never apparently negotiated explicitly between the parties." In the district court's view, it would therefore be inappropriate to "prohibit either side from raising the question of insurance in this case." Indeed, at the pretrial conference on February 8, 2013, Hellmann's own attorney had stated that "I don't know how I prove that the terms and conditions are enforceable unless I prove that [Hellmann] offered [Eagle] the opportunity to get insurance," and emphasized that "most certainly, I am going to have to talk about insurance." Accordingly, the district court held that both sides should be permitted to raise issues relating to insurance during the trial, and both sides did so frequently.

This court has upheld similar rulings in several cases. In *DSC Communications Corp. v. Next Level Communications*, 107 F.3d 322, 329 (5th Cir. 1997), this court held that it was not an abuse of the district court's discretion to deny an objection based on Rule 411 of the Federal Rules of Evidence where an indemnity agreement "was an integral part of the relationship between the parties in this litigation." This court also explained in *Savoie v. Otto Candies, Inc.*, 692 F.2d 363, 369 (5th Cir. 1982), that "evidence that a person has liability insurance may be admissible when it is relevant to some disputed matter other than simply whether that person acted negligently or otherwise wrongfully." In *Dicks v. Cleaver*, 433 F.2d 248, 254 (5th Cir. 1970), this court likewise held that the "usual rule" against evidence of "liability insurance . . . must give way where the fact of insurance has arguably an independent, substantive evidentiary relevance."

The district court's decision to allow both parties to discuss insurance measures correctly reflected this body of case law. It also did not reflect a "clearly erroneous assessment of the evidence."[6] Although Hellmann argued

---

[6] *See id.*

8

No. 13-10519

before the district court—and has now argued before this court—that there is a "distinction between property insurance and liability insurance," it has cited no authority indicating that this distinction is relevant under Rule 411 of the Federal Rules of Evidence. Moreover, even if there is merit to this distinction, Hellmann never requested a limiting instruction during trial that would have enabled the jury to consider the evidence regarding insurance only for permissible purposes. Where "counsel never requested a more complete limiting instruction," the district court "cannot [be] fault[ed] . . . for failing to give one spontaneously."[7]

Hellmann therefore has failed to demonstrate either that the district court had a flawed understanding of the law, or clearly erred in its assessment of the evidence. Accordingly, this court has no basis on which to reverse the district court's evidentiary ruling for abuse of discretion.[8]

III.

The remaining issues in this appeal relate to the district court's jury instructions. Where a party properly objects to a jury instruction before the district court under Rule 51 of the Federal Rules of Civil Procedure, this court reviews the district court's jury instructions for abuse of discretion.[9] Under the abuse-of-discretion standard, "'[a] challenge to jury instructions must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. . . . Even if the challenger proves the instructions misguided the jury, we reverse only if the erroneous instruction affected the outcome of the case.'"[10]

---

[7] *United States v. Stevens*, 38 F.3d 167, 170 (5th Cir. 1994).

[8] *See Baisden*, 693 F.3d at 508; *Bocanegra*, 320 F.3d at 584.

[9] *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 244 (5th Cir. 2013).

[10] *Price v. Rosiek Const. Co.*, 509 F.3d 704, 708 (5th Cir. 2007) (quoting *Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 365 (5th Cir. 2002)).

No. 13-10519

However, as we emphasized in our decision in *Jimenez v. Wood County, Texas*, 660 F.3d 841, 845-46 (5th Cir. 2011) (en banc), we review under the plain-error standard where a party fails to object in accordance with the "timing requirement" imposed on litigants under Rule 51. That is, a district court must provide an opportunity for parties to object to the proposed jury instructions "after the court announces its proposed instructions, and before the instructions and arguments are delivered."[11] If a party does not make its objection specifically at this time, then appellate consideration of the party's challenge to the district court's jury instruction is limited to review under the plain-error standard.[12]

Under the plain-error standard, a jury instruction must be upheld unless it contains "an obviously incorrect statement of law, . . . that 'was probably responsible for an incorrect verdict, leading to substantial injustice.'"[13] To rise to the level of obviousness constituting plain error, a legal error must not be "'subject to reasonable debate.'"[14] Even where a party's challenge merely requires extending existing precedent, the district court's failure to do so is not

---

[11] *Jimenez*, 660 F.3d at 845-46.

[12] *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248-49, and n.4 (5th Cir. 2011) ("[I]t would be unjust to allow [a litigant] to sit back during trial, observe [the other party]'s litigation strategy, and then demand a new trial . . . when it dislikes the verdict."). *See also Booker v. Massachusetts Dep't of Pub. Health*, 612 F.3d 34, 40-41 (1st Cir. 2010) ("The requirements of Rule 51 are not to be taken lightly and there is a high price to be paid for noncompliance. Failure to comply with the rule ordinarily results in forfeiture of the objection to which the failure relates, and we review forfeited objections only for plain error." (citations and internal quotation marks omitted)); *Griffin v. Foley*, 542 F.3d 209, 221 n.17 (7th Cir. 2008) ("The pre-2003 rule allowed a timely objection at any time before the jury retires to consider its verdict, whereas the rule now requires a party to object at the opportunity provided by the court before the instructions and arguments are delivered." (citations and internal quotation marks omitted)).

[13] *Tompkins v. Cyr*, 202 F.3d 770, 784 (5th Cir. 2000) (quoting *Automotive Group v. Central Garage, Inc.*, 124 F.3d 720, 730 (5th Cir. 1997)). *See also Nero v. Indus. Molding Corp.*, 167 F.3d 921, 932 (5th Cir. 1999).

[14] *Jimenez*, 660 F.3d at 847 (quoting *United States v. Ellis*, 564 F.3d 370, 377-78 (5th Cir. 2009)).

10

plain error.[15]   An important caveat, as the Supreme Court explained in *Johnson v. United States*, 520 U.S. 461, 468 (1997), is that under plain-error review the obviousness of the legal error is to be adjudged based on the clarity of the law "at the time of appellate consideration."[16]

## A.

With respect to its argument regarding federal preemption, Hellmann failed to satisfy the "timing requirement" of Rule 51.[17]   As reflected in the record and confirmed by Hellmann's lawyer during oral argument before this court, Hellmann never raised its federal preemption argument at any time between the pretrial conference on February 8, 2013, and the present appeal. On March 19, 2013, the district court provided the parties with a draft copy of the proposed jury instructions and an opportunity to make written objections. Hellmann availed itself of this opportunity, but Hellmann's written submission contained no objection relating to the applicable law or federal preemption.

Later, when the district court gave the parties an opportunity in open court to speak more expansively about their written objections, Hellmann again declined to raise the issue of federal preemption.  As Hellmann's lawyer explained, "all of the defendant's objections were contained in its comprehensive inserts and comments in the jury charge," and Hellmann was satisfied to "stand on that."  Essentially, Hellmann now argues that the district court should have recalled Hellmann's federal preemption argument from January and February 2013 when drafting the final jury instructions on March 20, 2013, even though Hellmann itself never referenced this federal

---

[15] *United States v. Guzman*, 739 F.3d 241, 246 n.8 (5th Cir. 2014) (citing *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005)).

[16] *Jimenez*, 660 F.3d at 847 n.10 (analyzing the *Johnson* exception in the context of plain-error review under Rule 51 in a civil case).

[17] *See id.* at 845-46.

preemption argument in Hellmann's objections to the proposed jury instructions.

Accordingly, this aspect of the present case is materially indistinguishable from *Jimenez*. In that case, the objecting party also "assert[ed] that it sufficiently alerted the district court to its objection by mentioning [the grounds for its objection] during a pre-trial conference."[18] But as the en banc court held in that case, a party cannot merely rely on "'the fact that the court is already aware of its position as an excuse for a failure to make a specific, formal objection at the charge conference.'"[19] Rule 51 specifically requires parties to make their objections after the proposed jury charge has been drafted and distributed for comment.

In this case, therefore, we review Hellmann's argument regarding federal preemption for plain error.[20] Under this standard, Hellmann's argument cannot prevail. "The plain error exception is designed to prevent a miscarriage of justice where the error is clear under current law."[21] But the existing law is far from clear regarding the preemptive effect of federal common law in instances where, as in the present case, a shipment originates outside the United States and is lost before crossing the border.

The most relevant provision of the Carmack Amendment, now codified at 49 U.S.C. § 14706,[22] applies to shipments "from a place in the United States to a place in an adjacent foreign country." Hellmann argues that "the

---

[18] *See id.*

[19] *Id.* at 845-46 n.7 (quoting 9 James Wm. Moore et al., Moore's Federal Practice § 51.33 (3d ed. 2008)).

[20] *See Garriott*, 661 F.3d at 248-49, and n.4; *Booker*, 612 F.3d at 40-41; *Griffin*, 542 F.3d at 221 n.17.

[21] *Taita Chem. Co., Ltd. v. Westlake Styrene, LP*, 351 F.3d 663, 668 (5th Cir. 2003). *See also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 296 (5th Cir. 2007).

[22] *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 777 n.6 (5th Cir. 2003).

principles and framework set out in the Carmack Amendment to the Interstate Commerce Act" should also be judicially extended as a matter of federal common law to cover shipments that do not fall within the Carmack Amendment's literal scope.[23]  Hellmann also argues that this federal common law should preempt all state law remedies.   But Hellmann has cited no controlling precedent in support of these far-reaching propositions.   Rather, Hellmann cites a single case directly on point, *Ingram Micro, Inc. v. Airoute Cargo Exp., Inc.*, 154 F. Supp. 2d 834, 839 (S.D.N.Y. 2001).   In that case, a district court held that federal common law should apply to a ground shipment originating in Canada simply because "most forms of interstate transportation are governed by federal law that has entirely preempted state regulation of common carriers."   The district court in *Ingram*, 154 F. Supp. 2d at 839, also drew an analogy between the Carmack Amendment and the Warsaw Convention, a multilateral treaty governing the international carriage of passengers, baggage, and cargo by air.[24]

Whether or not the *Ingram* court's reasoning by analogy is logical and persuasive, the district court in the present case was not bound by the *Ingram* court's holding.  Moreover, in the absence of any additional case law supporting the *Ingram* court's unique position, we cannot say that the question addressed by the *Ingram* court should clearly be decided in Hellmann's favor.  In fact, in its most relevant decision, *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 103 (2010), the Supreme Court explicitly left open a similar question regarding whether the Carmack Amendment "applies to goods

---

[23] We emphasize again that we are not called upon to determine whether the events of the present case—involving a shipment by truck originating in Mexico, as to which the loss also occurred in Mexico—actually do or do not fall within the literal scope of the Carmack Amendment, 49 U.S.C. § 14706.  Because neither party made this argument before the district court, we need not decide this question.

[24] *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 123-24 (1989).

No. 13-10519

initially received in Canada or Mexico, for import into the United States." For their part, some district courts in our circuit have held that the Carmack Amendment itself does not apply to shipments originating in foreign countries.[25] Other district courts have held that the Carmack Amendment itself does apply only "to the domestic portion of shipments from a foreign country into the United States," which would exclude the present case where the loss occurred in Mexico.[26] But Hellmann has not identified any district courts in our circuit that have addressed Hellmann's theory based on federal common law.

As for our own court, although we have addressed the preemptive effect of the Carmack Amendment itself,[27] we also have never addressed the applicability of such preemption to shipments that originate outside the United States. At best, therefore, Hellmann's arguments regarding federal common law and federal preemption suggest that the district court might have erred by failing to extend existing precedent. As stated above, however, we have frequently held that failing to extend existing precedent does not constitute "plain error."[28]

Accordingly, even if the district court did commit a legal error in this case by instructing the jury based on Texas law, such error would not have been

---

[25] *See, e.g.*, *Golden Logistics, S.A. de C.V. v. Danny Herman Trucking, Inc.*, CIV.A. L-11-42, 2011 WL 3567521, at *2 (S.D. Tex. Aug. 12, 2011) ("Carmack does not apply to an intermodal carriage from Germany to a destination within the United States. . . . Carmack does not apply if the Laredo–to–[Kentucky] journey was part of a larger carriage from Mexico covered by a through bill of lading.").

[26] *Audio Visual Servs. Corp. v. Felter Int'l, Inc.*, CIV.A. H-05-0381, 2006 WL 1030078, at *1 (S.D. Tex. Apr. 18, 2006). *See also Northern Marine Underwriters, Ltd. v. FBI Exp., Inc.*, CIV.A. H-08-2549, 2009 WL 7326068, at *4 (S.D. Tex. Apr. 20, 2009) ("The Court, in light of the clear statutory language limiting the Carmack Amendment to claims that arise in the domestic leg of foreign shipments, holds, that Plaintiff has no Carmack Amendment claim against the Defendants.").

[27] *Hoskins*, 343 F.3d at 778.

[28] *Guzman*, 739 F.3d at 246 n.8; *Garcia-Rodriguez*, 415 F.3d at 455.

14

No. 13-10519

"clear or obvious," but would rather have been "subject to reasonable debate."[29] Under such circumstances, Hellmann's argument regarding federal preemption gives us no basis to reverse the district court's judgment under the plain-error standard. We therefore decline to make any definitive pronouncement on the applicability of the Carmack Amendment or federal common law based on the Carmack Amendment where a shipment originates outside the United States and the loss occurs before crossing the border.

B.

Hellmann also challenges the district court's instruction regarding damages resulting from Eagle's "loss of use" of the industrial presses. Such damages are "frequently, but not categorically" held to constitute consequential damages under Texas law.[30] As the Supreme Court of Texas held in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 816 (Tex. 1997), "[c]onsequential damages . . . result naturally, but not necessarily, from the defendant's wrongful acts" and "need not be the usual result of the wrong, but must be foreseeable . . . ." As Hellmann correctly observes, therefore, "[f]oreseeability is a fundamental prerequisite to the recovery of consequential damages for breach of contract" under Texas law.[31]

Hellmann argues that the jury instruction relating to Eagle's "loss of use" of the industrial presses was an incorrect statement of law because it did not indicate that such damages must be "reasonably foreseeable." In considering this challenge, it is irrelevant in the present case whether

---

[29] *Jimenez*, 660 F.3d at 847; *Tompkins*, 202 F.3d at 784. *See also Colley v. CSX Transp., Inc.*, 376 F. App'x 387, 390-91 (5th Cir. 2010) (concluding that, where a question of Mississippi law had not been settled by the Mississippi Supreme Court, a district court's failure to provide the requested jury instruction was not plain error).

[30] *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 121 (Tex. App. 2011).

[31] *See Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011).

No. 13-10519

Hellmann properly complied with Rule 51 during proceedings before the district court.  Even under the abuse-of-discretion standard, the district court's explanation of consequential damages created no "substantial and ineradicable doubt" as to whether the jury was properly guided on the law.[32]  Nor does it appear that the instruction affected "the outcome of the case."[33]  We therefore must reject Hellmann's second challenge.

First, the jury instruction as written was not erroneous.  That is, while the jury instruction did not state explicitly that the damages awarded for "Eagle's loss of use of the presses" must be reasonably foreseeable, the jury instruction did provide that such damages must have been "proximately caused by the defendant Hellmann's failure to comply with the agreement."  As decisions by numerous Texas courts explain, one of "[t]he two elements of proximate cause" is foreseeability.[34]  In particular, Texas courts equate proof of proximate cause with "'a foreseeability showing'" specifically "'in the context of special or consequential actual damages.'"[35]  The relationship between these two concepts is also confirmed by Texas Pattern Jury Charge 100.12.

It is true, of course, that "proximate cause" is a legal term of art and, as this court previously held in *United States v. Anderton*, 629 F.2d 1044, 1048-49 n.5 (5th Cir. 1980), "[t]he better practice would be to instruct the jury on the meaning of all terms of operative significance . . . ."  But this court has also consistently held that the trial judge should be afforded "substantial latitude

---

[32] *See Price*, 509 F.3d at 708 (quoting *Thomas*, 297 F.3d at 365).

[33] *See id.*

[34] *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 222-23 (Tex. 2010); *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2004).

[35] *PopCap Games, Inc. v. MumboJumbo*, LLC, 350 S.W.3d 699, 713 (Tex. App. 2011) (quoting *Lesikar v. Rappeport*, 33 S.W.3d 282, 305 (Tex. App. 2000)).  *See also Employees Ret. Sys. of Texas v. Putnam, LLC*, 294 S.W.3d 309, 316 n.7 (Tex. App. 2009) (observing that the concept of "proximate cause" that is "applicable to consequential damages in a breach-of-contract claim" requires that "such damages must be foreseeable and directly traceable to the wrongful act and result from it" (citations and internal quotation marks omitted)).

16

in describing the law to the jurors,"[36] so long as the "instructions regarding state substantive law [are] accurate."[37]  In this case, although the challenged instruction likely should have been rendered clearer and more explicit for the ordinary juror, the instruction was nonetheless correct.[38]  Accordingly, Hellmann has failed to show "substantial and ineradicable doubt" as to "whether the jury has been properly guided in its deliberations."[39]

Second, and more importantly, Hellmann's challenge also cannot succeed because Hellmann has not shown that "the outcome of the case" was affected by the district court's failure to define consequential damages as reasonably foreseeable.[40]  The jury heard testimony from David Kang, one of Hellmann's branch managers, who admitted that, in his experience, "the consequence" of a delay in a customer's shipment is usually "[a]dditional expenses and nonproductivity.  So additional costs."  The jury also heard testimony from John Russell, one of Hellmann's regional sales managers, regarding an e-mail notifying him at the very beginning of the transaction that the content of the shipment included "[h]ydraulic presses from Mexico."  The

---

[36] *See Jimenez*, 660 F.3d at 845; *United States v. Bernegger*, 661 F.3d 232, 240-41 n.3 (5th Cir. 2011); *United States v. Ortiz-Mendez*, 634 F.3d 837, 839 (5th Cir. 2011).

[37] *See Baker v. Canadian Nat'l/Illinois Cent. R.R.*, 536 F.3d 357, 365 (5th Cir. 2008); *Harrison v. Otis Elevator Co.*, 935 F.2d 714, 717 (5th Cir. 1991) ("No harmful error is committed if the charge viewed as a whole correctly instructs the jury on the law, even though a portion is technically imperfect . . . .  The trial court has broad discretion to compose jury instructions, as long as they are fundamentally accurate and not misleading." (internal citations and quotation marks omitted)).

[38] *See Bernegger*, 661 F.3d at 240-41 n.3 (finding no abuse of discretion where a district court "fail[ed] to instruct the jury on the definition of 'letter of intent'"); *United States v. Tucker*, 345 F.3d 320, 335 (5th Cir. 2003) (concluding that a trial court is not obligated "to define within the jury charge 'willfully,' as that term is referred to in [15 U.S.C. § 77x]"); *United States v. Loe*, 248 F.3d 449, 459 (5th Cir. 2001) ("We have held that failure to charge materiality to the jury requires reversal, without considering whether the error was harmless.  However, we have not found that failure to *define* materiality compels the same response.").

[39] *See Price*, 509 F.3d at 708 (quoting *Thomas*, 297 F.3d at 365).

[40] *See id.*

No. 13-10519

evidence before the jury therefore demonstrated that a loss of profits, which would have "result[ed] naturally"[41] from Hellmann's failure to deliver Eagle's industrial equipment, was foreseeable from the outset of the transaction.

Moreover, Hellmann did not argue during either its opening statement or closing argument that the damages resulting from the loss of this machinery's use were unforeseeable when the transaction was made. On the contrary, Hellmann's own attorney openly conceded before the jury during closing argument that, "if you have to answer it," then Eagle "proved up that they had to buy replacement presses, and that cost money. They proved up the window of time where there was no presses. They lost money, they proved that." Because even "a failure to instruct on an element is harmless when the element is undisputed,"[42] a district court's failure to provide a precise definition for an undisputed element is therefore equally harmless. In this case, Hellmann itself failed to draw any distinction between damages that were reasonably foreseeable and damages that were not. Accordingly, Hellmann cannot now argue that the lack of an explicit jury instruction emphasizing this distinction "affected the outcome of the case."[43] For these reasons, Hellmann's second challenge to the district court's jury instructions must be rejected.

C.

Finally, Hellmann argues that the district court erred by placing the burden of proof on Hellmann to demonstrate "by a preponderance of the evidence, that it complied with its fiduciary duties to Eagle . . . ." Even under the abuse-of-discretion standard, this challenge must also be rejected.

---

[41] *See Arthur Andersen*, 945 S.W.2d at 816.

[42] *See United States v. Reff*, 479 F.3d 396, 402 (5th Cir. 2007).

[43] *See Price*, 509 F.3d at 708 (quoting *Thomas*, 297 F.3d at 365).

No. 13-10519

As this court explained in *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 295 (5th Cir. 2007), "[u]nder Texas law, where a fiduciary engages in a transaction with a party to whom the fiduciary owes duties, a presumption of unfairness arises, and the burden is placed on the fiduciary to establish that the transaction was fair." This is confirmed by Texas Pattern Jury Charge 104.2, which provides that a fiduciary must "prove he complied with his duty" wherever a fiduciary relationship of agency exists between parties to a transaction.

Here, the jury's finding of an agency relationship was supported by the evidence. The jury heard testimony from Mark Sola, Hellmann's vice president for customs compliance, that Hellmann regularly requests and receives a written power of attorney from its customers that "allows Hellmann to act on behalf of its customers with U.S. Customs." David Kang, Hellmann's branch manager, also testified that freight forwarders ordinarily "act as an agent for customers," and that "Hellmann [wa]s an agent of Eagle" during the shipping transaction. The jury therefore found, in response to a question on the verdict form, that "Eagle proved, by a preponderance of the evidence, that a relationship of trust and confidence existed between Eagle and Hellmann . . . ." This was sufficient under Texas law, as explained in *Navigant Consulting*, 508 F.3d at 295, to shift the burden to Hellmann to demonstrate that it complied with its fiduciary duties in any transactions with its principal.[44]

Hellmann argues, however, that before the district court can engage in burden shifting, Texas law requires Eagle to prove that Hellmann "benefited" from its transaction with Hellmann. In Hellmann's view, this prerequisite is not satisfied in the present case because "the evidence is that Hellmann lost

---

[44] *See Amwest Sav. Ass'n v. Statewide Capital, Inc.*, 144 F.3d 885, 891 (5th Cir. 1998) ("[F]iduciaries who engaged in 'transactions' with their principals were required to prove the fairness of those transactions.").

money in performing under its shipping agreement with Eagle, not that it gained from it." This argument, however, is unavailing. Initially, Hellmann's right to receive payment for its services constituted a benefit arising from the shipping transaction, because "[a] promise" may constitute a valuable consideration in Texas.[45] Moreover, the jury heard testimony from John McConnell, Hellmann's export manager, indicating that much of the shipment's delay resulted from Hellmann's decisions to save itself money—without notifying its principal—rather than pay additional costs for expedited resolution of problems at the Mexican border. Whichever of these two aspects of the transaction is taken into consideration, therefore, it is evident that Hellmann did benefit from its transaction with Eagle.

Accordingly, based on the testimony regarding Hellmann's transaction with its principal, Eagle, the district court properly instructed the jury to shift the burden of proof in accordance with Texas law.[46]

IV.

For the reasons set forth above, we conclude that the district court's application of Rule 411 of the Federal Rules of Evidence did not constitute an abuse of discretion. We also conclude that the district court's decision to instruct the jury based on Texas law was not plain error. Finally, we conclude that the district court's explanation of the Texas law governing foreseeability of consequential damages and the burden to show breach of fiduciary duty did not constitute abuse of discretion.

We therefore AFFIRM the judgment of the district court.

AFFIRMED.

---

[45] *See Robert L. Crill, Inc. v. Bond*, 76 S.W.3d 411, 418 (Tex. App. 2001); *Copeland v. Alsobrook*, 3 S.W.3d 598, 606 (Tex. App. 1999).

[46] *Navigant Consulting*, 508 F.3d at 295.