# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 17, 2023

Lyle W. Cayce
Clerk

―――――――――

No. 22-20363

―――――――――

Daniel Arturo Garcia-Ascanio,

*Plaintiff—Appellant*,

*versus*

Spring Independent School District,

*Defendant—Appellee*.

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1847

―――――――――――――――――――――――――

Before Wiener, Graves, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

In this case involving the Uniformed Services Employment and Reemployment Rights Act ("USERRA" or "the Act"), plaintiff Daniel Arturo Garcia-Ascanio ("Garcia") appeals the district court's entry of judgment, after a jury trial, in favor of defendant Spring Independent School District ("Spring ISD"). Garcia asserts that the district court gave the jury improper instructions and that the evidence was insufficient to support the jury's verdict. He also contends that he is entitled to front pay and attorney's fees in addition to compensatory damages because he was the "prevailing party." We see no error. The jury instructions were not erroneous, and the

jury's verdict was supported by sufficient evidence. Garcia failed to properly raise his asserted errors in the district court and therefore did not preserve them for appeal, and, in any event, his arguments lack any basis in case law and are inconsistent with the text of USERRA.

## I.

Spring ISD employed Garcia from August 2013 until July 2019, first as a teacher and later, beginning with the 2016 school year, as an Assistant Principal at Dueitt Middle School. During this time, Garcia was in the Army Reserve and took leave to fulfill his military duties.

In November 2018, Garcia was called to a meeting with Dueitt Principal Eric Mullens and Spring ISD's Assistant Superintendent for Middle Schools, Robert Lundin. Lundin testified that the meeting was to discuss Garcia's professional judgment, complaints about him from parents, and other performance issues. Garcia recorded part of the meeting, during which Lundin asked Garcia how he would manage his work responsibilities with his military responsibilities so that he didn't "screw over your colleagues because of your choices," meaning his choice to serve in the Army Reserve. Lundin sent a memo to Garcia after the meeting that memorialized their discussion, including Lundin's direction to Garcia that he needed to have a plan for ensuring that his military duties did not negatively affect his colleagues.

After the meeting, Garcia felt his job was threatened, and he retained a lawyer who sent a letter to Spring ISD concerning his USERRA rights. Soon after, Garcia was reassigned from being the Assistant Principal overseeing eighth grade students to Assistant Principal overseeing seventh grade students, but his job responsibilities and duties otherwise remained the same. Parents continued to complain about Garcia. Pamela Farinas, who had replaced Lundin as Assistant Superintendent of Middle Schools, met with

No. 22-20363

Garcia in March 2019. The meeting did not go well, and Farinas sent Garcia a memorandum afterwards about his professionalism.

Spring ISD eventually opened an investigation into allegations that Garcia had behaved improperly regarding student discipline involving illegal drugs. After concluding that Garcia had violated school policy and ethical standards, Spring ISD placed him on "home duty" in May 2019. That same month, the Spring ISD Board voted to propose nonrenewal of his contract at the end of the school year.

Garcia sued, alleging violations of his rights under USERRA. Subsequently, the nonrenewal was rescinded and Spring ISD offered Garcia a one-year contract for the next school year at a different school. Garcia refused to sign the contract in part because he was concerned, based on language in the contract, that in doing so he would be admitting to the allegations against him—allegations that he denied and was concerned would negatively impact his military career.

Garcia's lawsuit proceeded to a jury trial. The parties jointly submitted proposed jury instructions to the district court. The court and the parties then reviewed the joint submission on the record. After the jury instructions were complete, the district court sought any objections, and neither party objected.

After deliberations, the jury answered, *inter alia*, Questions 1 through 3 affirmatively, finding that Garcia's military status and his engaging in USERRA-protected activity was a motivating factor in his constructive discharge. But the jury also answered Questions 4 and 5 affirmatively, finding that Spring ISD would have constructively discharged Garcia even if it had not taken his military services and protected activity into account.

Both parties moved for entry of judgment. Garcia then moved for the court to disregard the jury's answers to Questions 4 and 5, arguing for the

first time that the jury should not have been asked those questions because Spring ISD's affirmative defense was not available in a constructive discharge context. The district court entered judgment for Spring ISD based on the jury's answers to Questions 4 and 5, and Garcia appealed.

## II.

"Our standard of review for challenges to jury instructions is governed by Rule 51 of the Rules of Civil Procedure. Rule 51 requires a party to object to jury instructions in order to preserve a claim of error for appeal." *Jimenez v. Wood Cnty.*, 660 F.3d 841, 844 (5th Cir. 2011) (en banc). Such objections must be made in a timely fashion, meaning "*before* the instructions and arguments are delivered." *Id.* at 845 (quoting Fed. R. Civ. P. 51(b)(2)) (emphasis added); Fed. R. Civ. P. 51(c)(2)(A). Preserved objections are reviewed for abuse of discretion. *Jimenez*, 660 F.3d at 845.

"Where a proper objection is not made, however, our review of a jury instruction challenge is limited to review for plain error." *Id.* (citing Fed. R. Civ. P. 51(d)(2)). We "appl[y] the plain error standard of [Federal Rule of Criminal Procedure] 52(b) in civil cases," *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc), including to unpreserved jury instruction challenges. *See Highlands Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1031–32 (5th Cir. 1994). To satisfy plain-error review, Garcia must show that (1) there was an "error," (2) that was "clear or obvious," (3) that "affected [his] substantial rights," and (4) that we should exercise our discretion to remedy the error because it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up).

"Whether a party is a 'prevailing party' entitled to fees is a legal question that the court reviews *de novo*." *Davis v. Abbott*, 781 F.3d 207, 213 (5th Cir. 2015) (citation omitted).

### III.

"USERRA is a federal law that protects employees from being discriminated against by their employers because of their military service." *McIntosh v. Partridge*, 540 F.3d 315, 320 (5th Cir. 2008) (citation omitted). "USERRA's anti-discrimination provision prohibits an employer from denying initial employment, reemployment, retention in employment, promotion, or any benefit of employment to a person on the basis of membership, application for membership, performance of service, application for service, or obligation of service." *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004) (citing 38 U.S.C. § 4311(a)). Additionally, "an employer must not retaliate against a person by taking adverse employment action against that person because he or she has taken an action to enforce a protection afforded under USERRA." *Id.* (citing § 4311(b)). Discrimination and retaliation prohibited by USERRA can take many forms. Garcia claims that he was constructively discharged by Spring ISD in violation of the Act. "If an employer makes service members' employment so intolerable that they feel forced to quit," USERRA's "clear prohibition against firing service members based on their military service" provides for a constructive discharge claim. *See Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 181–82 (5th Cir. 2011) (collecting cases).

To establish a USERRA claim, a plaintiff must prove that his or her "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action." *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 547 (5th Cir. 2013) (quoting 38 U.S.C. § 4311(c)(1)). The Act does not define "motivating factor," but "[b]y referring to *a* 'motivating factor,' the statute does not textually suggest that military service be the sole factor." *Id.* at 545 (emphasis added). Rather, to trigger liability, military status need only be "one of the reasons" for the employer's prohibited action. *Id.* (citation

omitted). USERRA also provides employers with an affirmative statutory defense: An employer is not liable "if it 'can prove that the action would have been taken in the absence of such [military status].'" *Id.* (quoting § 4311(c)(1)). "[T]he employer has the burden to prove the affirmative defense that it would have taken the action anyway." *Id.* (citation omitted). This same burden-shifting framework applies to retaliation claims. *See* 38 U.S.C. § 4311(c)(2). The Act also authorizes a court to award a prevailing plaintiff reasonable attorney's fees. *See* 38 U.S.C. § 4323(h)(2).

On appeal, Garcia argues that the "mixed motive defense"—by which he means the employer's affirmative defense that it would have taken the same action in the absence of an employee's military status or protected activity—is "inapplicable" in a constructive discharge case because "there is an inherent disconnect between [the] mixed-motive defense and constructive discharge." Thus, he asserts that the district court reversibly erred by instructing the jury on the defense and claims the jury should never have been asked Questions 4 and 5. This argument is meritless.

Before addressing the merits, we must clarify our standard of review. *See United States v. Suchowolski*, 838 F.3d 530, 532 (5th Cir. 2016) ("It is well-established that our court, not the parties, determines the appropriate standard of review."). Garcia asserts that his challenge to the district court's jury instructions presents a "pure question of law" that we should review *de novo*. This is incorrect. Garcia did not properly object to the jury charge in the district court, and therefore, we would typically review his claim for plain error. *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002) ("When the party challenging a jury instruction does not properly object as required by Rule 51 of the Federal Rules of Civil Procedure, this Court applies the plain error standard of review.") (footnote and citation omitted). Further, because Garcia admits in his brief that there is no case law supporting his position, he essentially concedes that he cannot satisfy plain-

error review. *See United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015) (explaining that "lack of binding authority is often dispositive in the plain-error context"); *United States v. Bishop*, 603 F.3d 279, 281 (5th Cir. 2010) ("An error is not plain unless the error is clear under current law.") (quotation and citation omitted).

In this case, however, not only did Garcia not properly object, but he jointly requested the very jury instructions that he now claims were erroneous. Though neither party referenced it, under the invited error doctrine, "[a] party cannot complain on appeal of errors which he himself induced the district court to commit." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 476 (5th Cir. 2015) (citation omitted). This doctrine applies to jury instructions and bars a claim of error on appeal "at least where it does not appear that a substantial miscarriage of justice would result from its application." *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606–07 (5th Cir. 1991). "We will not reverse on the basis of invited error, absent manifest injustice." *United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001) (quotation and citation omitted); *United States v. Lemaire*, 712 F.2d 944, 949 (5th Cir. 1983) (explaining that doctrine does not require reversal "unless the error was so patent as to have seriously jeopardized the rights of the appellant"). Garcia has not even attempted to show a manifest injustice.

Regardless, Garcia's claim would fail under any standard of review because he cannot show an error. According to Garcia, USERRA's mixed-motive defense is not applicable to a constructive discharge claim because "constructive discharge is formally effected by the employee's decision, the employee's intention, and the employee's ultimate act," and thus whether an employer had a mixed motive is not relevant because an employer cannot "intend" to constructively discharge an employee. This argument fundamentally misunderstands the nature of the claim and its focus on the actions and motivations of the employer.

"A constructive discharge occurs when *the employer* makes working conditions so intolerable that a reasonable employee would feel compelled to resign." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citation omitted) (emphasis added). "[I]f *the employer* deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then *the employer* has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) (emphasis added). "The availability of such relief [prevents] *an employer* from circumventing the express purposes of USERRA by engaging in some intolerable form of harassment[.]" *Carder*, 636 F.3d at 182 (emphasis added).

Garcia acknowledges, as he must, that USERRA provides employers with an affirmative defense, yet contends, without supporting authority, that we should disregard the statute here. But the text of USERRA clearly provides employers with a mixed-motive defense. 38 U.S.C. § 4311(c)(1)-(2). There is no carve-out for constructive discharge claims. Thus, it was not error for the district court to instruct the jury on the defense and it was proper for the jury to answer Questions 4 and 5.

Finally, in a single paragraph of his brief, Garcia argues that even if his challenge to the jury instructions fails, he should still prevail because there was "no evidence to support the jury's answer to Question 4 and 5." First, Garcia forfeited this argument by failing to properly raise it in a Rule 50(a) motion before the district court.[1] *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001) (explaining that a party that fails to make a

---

[1] We also have doubts that this issue is adequately briefed on appeal, as Garcia fails to recite the standard of review applicable to sufficiency-of-the-evidence challenges or provide any citations to the record or supporting authority. *See* FED. R. APP. P. 28(a)(8).

No. 22-20363

Rule 50(a) motion on an issue "waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal") (footnote and citation omitted). In any event, Garcia's sufficiency-of-the-evidence claim would fail under any standard of review because it is premised on his meritless argument that a mixed-motive defense is unavailable in the constructive discharge context, and because there was ample evidence to support the jury's verdict.

## IV.

For the foregoing reasons, Garcia has not shown that he was a "prevailing party" entitled to front pay or attorney's fees. The district court correctly entered judgment in favor of Spring ISD.

AFFIRMED.