# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 3, 2025

Lyle W. Cayce
Clerk

No. 23-20292

J.A. Masters Investments; K.G. Investments,

*Plaintiffs—Appellants*,

*versus*

Eduardo Beltramini,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-4367

_____

Before Haynes, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

This appeal stems from a five-day jury trial on allegations of fraud and breach of contract. Appellants J.A. Masters Investments and K.G. Investments raise several issues for our review. But our previous majority opinion determined that before we could reach the merits, a limited remand was necessary to resolve a threshold jurisdictional question. The district court held additional proceedings, and we are now satisfied as to our

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20292

jurisdiction. Proceeding now to the merits, we AFFIRM the district court across the board, with one exception: we VACATE its award of attorney fees and REMAND for a determination as to whether they have been properly segregated.

I

A

This case involves multiple failed business dealings in the soccer industry. Defendant Eduardo Beltramini is a FIFA match agent who promotes and arranges professional soccer matches through an unincorporated business called "Planet Futbol Event Management." There are many facets to operating Planet Futbol, and arranging professional soccer matches generally, one of which is financing the matches. Rather than fund the entire operation himself, Beltramini would often invite outside investors to underwrite part of the match, and in return the investors would receive a portion of the profits.

Cue the named plaintiffs in this case: J.A. Masters Investments and K.G. Investments, both of which are owned by Jefferson Castro Guevara.[1] Guevara, who the district court described as knowing little to nothing about either soccer or finance, decided he wanted to not only invest in future soccer matches with Beltramini but also buy his company, Planet Futbol. To that end, the parties signed a total of seven contracts, six for the soccer matches in which Guevara wanted to invest and one for the sale of Planet Futbol.

---

[1] We will refer to J.A. Masters Investments and K.G. Investments collectively as "Plaintiffs" and will refer to Mr. Guevara individually when the context necessitates it. Relatedly, Plaintiffs' liberal use of "appellant" and "appellee" throughout their briefing, which they sometimes confuse and interchange with the parties' actual names, illustrates the wisdom behind Rule 28(d) of the Federal Rules of Appellate Procedure.

With respect to the soccer matches, the parties agreed to split the expenses and profits in various ways (usually 50/50). At the end of each match, Beltramini would provide Guevara an accounting of the revenue and expenses—or, as Plaintiffs describe it, "a self-composed worksheet"—for purposes of distributing the profit. Beltramini admits that calculating the expenses for each game required "a tremendous amount of record keeping," and the district court observed that "although Mr. Beltramini knew a lot about professional soccer, he knew less about business and accounting." At any rate, based on the numbers he estimated for each game, Beltramini would distribute the profit to Plaintiffs commensurate to their percentage investment.

With respect to the sale of Beltramini's company, Planet Futbol, Guevara agreed to a purchase price of $300,000, payable in three installments of $100,000. The sale was memorialized in the parties' Business Sale Agreement, which was drafted by Beltramini's son, Mauro, who at the time was a Texas-licensed attorney. The Business Sale Agreement had seventeen articles, but only three are relevant to this dispute.

First, in Article 4, the parties agreed to the payment terms: Guevara would pay the first $100,000 on the closing date, the second $100,000 after the first soccer match under the new ownership of Guevara, and the third $100,000 after the second soccer match. Importantly, however, Article 4 also made clear that "[t]he entire Purchase Price must be paid in full no later than July 1, 2020, notwithstanding" the above terms.

Second, in Article 8, titled "Conditions Precedent," the parties agreed to five conditions that Beltramini had to meet "before the Closing Date." One of those conditions, subsection (a)(IV), required Beltramini to provide Guevara "with any and all information required so that [Guevara] may step into the shoes of [Beltramini] for the proper operation of the

Business." In the last sentence of Article 8, the parties agreed that if either of them did "not satisfy their obligations under this clause, the entire Agreement [would] be null and void" and there would be "no further relationship or obligations between the Parties."

Third, in Article 10, the parties agreed to a noncompete clause: "For a period of 5 years after [Beltramini's employment under Guevara's new ownership], Beltramini agrees to refrain from engaging directly or indirectly, in any form of commercial competition (including . . . through business, marketing, investment or financial activities) with [Guevara]."

The parties signed the agreement in October 2019, and Guevara paid Beltramini the first $100,000 on the closing date, as promised. The subsequent soccer matches envisioned by the agreement, however, never came to pass. The first match was scheduled for March 2020, the same time COVID-19 was spreading throughout the United States. Predictably, the games were canceled. When Guevara tried to recover a bond payment he made to FIFA for the first game, he got into a "disagreement over funds" with Beltramini, which apparently precipitated this lawsuit.

B

Plaintiffs filed suit against Beltramini in the Southern District of Texas in December 2020, asserting, among other things, claims of fraud and breach of contract. Plaintiffs specifically alleged that Beltramini, when composing his post-game accounting reports, "wrongfully inflated" the matches' expenses and "devalued [the] profits owed" to them. They also alleged that Beltramini failed in his obligation of handing the Planet Futbol business over to Guevara by not helping him obtain his FIFA agent license and by not "ced[ing] control over and provid[ing] all business contacts to Mr. Guevara in furtherance of the on-going business acquisition."

Shortly after Plaintiffs filed their lawsuit in federal court, Beltramini filed a parallel suit in state court for breach of contract, alleging that Plaintiffs were $200,000 short on the purchase price for Planet Futbol. Plaintiffs, as defendants in the state-court action, removed the case to federal court and moved to consolidate the cases, which the district court granted.

The parties proceeded to trial on the consolidated actions. "It was not an easy trial," the district court remarked, and it "made every effort to shield the jury from all [the] issues." To that end, the district court granted Beltramini's posttrial motion for judgment as a matter of law on two of the eight claims, concluding that (1) Plaintiffs failed to show a material misrepresentation with respect to the Peru v. El Salvador (2019) match, and (2) Plaintiffs breached the Business Sale Agreement by failing to pay Beltramini the full purchase price of $300,000.

The jury, for its part, similarly sided with Beltramini on the rest of the claims.[2] With respect to the fraud claims, the jury found that although Beltramini committed fraud for three of the four soccer matches, Plaintiffs sustained zero damages as a result. And with respect to Plaintiffs' breach-of-contract claim—that Beltramini failed to prepare Plaintiffs to take over the business—the jury found in Beltramini's favor.

Following the verdict, both parties moved for attorney fees and entry of judgment in their favor, taking opposing views as to what the jury's answers meant for their claims. As for the fraud claims, the district court found that the jury's answers—that Beltramini committed fraud but that Plaintiffs sustained no damages—were "readily reconcilable" because the

---

[2] When the district court took up Beltramini's Rule 50(a) motion, Plaintiffs abandoned their fraud claim arising out of the Peru v. Ecuador (2019) match, so a total of five claims were submitted to the jury.

evidence at trial showed that Beltramini "actually *underreported* the expenses he incurred" for the matches. As for the breach-of-contract claim, the district court concluded that Beltramini was entitled to his attorney fees under Texas law, specifically finding that Beltramini prevailed on the claim because Plaintiffs did not pay the full purchase price and that Beltramini's fees were reasonable "in light of the numerous issues and disputes before and during trial."

Plaintiffs timely appealed and raised several issues for our review. Before reaching those issues, however, our previous majority opinion determined that the record failed to definitively establish diversity jurisdiction and remanded the case for further limited proceedings in light of that failure. *J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 322–24 (5th Cir. 2024). The district court held an evidentiary hearing and found that complete diversity of citizenship exists between the parties. Now satisfied as to our jurisdiction, we proceed to the merits.

## II

Our analysis proceeds in five parts, following the order in which the parties briefed the issues. First, we discuss the jury's award of $0 in damages for Beltramini's alleged fraud. Second, we address the various evidentiary errors that Plaintiffs argue the district court made during trial. Third, we evaluate the district court's decision to grant Beltramini judgment as a matter of law on his breach-of-contract claim. Fourth, we take up whether the district court erred in awarding Beltramini his attorney fees. Finally, we review the district court's instructions, and answer to the jury's question, regarding conditions precedent in the Business Sale Agreement.

## A

Plaintiffs first complain about the jury's award of $0 in damages for their fraud claims against Beltramini. They specifically contend that the

district court improperly instructed the jury on damages and that the jury's damages finding is against the great weight of the evidence.

Because Plaintiffs never objected to the district court's instruction, we review the issue raised by their first argument for plain error.[3] Our review of the record reveals none. The district court instructed the jury that if it found that Beltramini defrauded Plaintiffs, it should award "compensatory damages . . . by estimating the lost profits [Plaintiffs] should have reasonably obtained from each game." Plaintiffs fail to explain how their preferred instruction—"the difference between the price paid and the value received"—materially differs from the instruction given to the jury. Plaintiffs have therefore failed to show any error, much less carry their heavy burden of showing plain error.

Plaintiffs' other argument—that the jury's award of $0 damages is against the great weight of evidence—is likewise unpreserved and unpersuasive. Plaintiffs concede that they failed to move for a new trial below, which is the proper way to preserve error on allegedly inadequate damages. *Bueno v. City of Donna*, 714 F.2d 484, 493–94 (5th Cir. 1983).[4] So

---

[3] Plaintiffs argue that this objection was preserved, citing the suggestion they made to the district court that it provide "[a] little more description of how you computed these [fraud] damages." That mere suggestion falls well short of preserving error on this issue. *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."). Indeed, when the district court said it was simply following the pattern jury charge, Plaintiffs seem to acquiesce in the instruction and said "Thank you, Your Honor."

[4] Arguing that they preserved their challenge to the jury's finding of no damages, Plaintiffs point to inapplicable Texas state procedural rules and caselaw that we need not consider here. Plaintiffs additionally submit that they raised the issue in their motion for attorney fees. Even assuming that was a proper vehicle to raise the issue, Plaintiffs fail to show where they made the argument. They cite over 70 pages of the record, none of which seem to have any relevance to the argument they now make on appeal. *See Murthy v.*

again, we review for plain error, which in this context means that we "will not reverse if *any* of the evidence supports the jury's verdict." *NewCSI Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 257 (5th Cir. 2017) (internal citations and quotation marks omitted). Our review of the record confirms that the jury's finding is supported by the evidence adduced at trial. Beltramini specifically pointed to all the instances in which he actually underreported expenses for the soccer matches. Testimony and various exhibits show hundreds of thousands of underreported expenses to Plaintiffs, ranging from payments to soccer teams, advertising, referees, hotels, and transportation. As the district court noted, "Mr. Beltramini lost money in the process and [Plaintiffs] ended up with *more* overall profit than they would have if Mr. Beltramini had been accurate in reporting the expenses." We thus conclude that there is evidence supporting the jury's finding of $0 in damages for Beltramini's alleged fraud.

B

Plaintiffs next take issue with several of the district court's evidentiary rulings. Their objections are either waived, forfeited, or meritless.

First, Plaintiffs contend that the district court erroneously permitted Mauro Beltramini (Beltramini's son) to testify regarding the expenses incurred from the soccer matches when he had no personal knowledge or involvement with any of the matches. Even if that were true, Plaintiffs' objection to Mauro's testimony cannot be squared with their later assent to admit Joint Exhibit 1, an exhibit that included Mauro's expenses calculations—the same exact content of his testimony. Plaintiffs have therefore waived any right to complain about it on appeal. *See Capobianco v.*

─────────────────────

*Missouri*, 144 S. Ct. 1972, 1992 n.8 (2024) ("[J]udges are not like pigs, hunting for truffles buried in the record." (alterations and internal quotation marks omitted)).

*City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("[D]efendants waived any objections to the admissibility of the reports by offering them themselves.").

Second, Plaintiffs argue that the district court erred by not allowing them to use a soccer-match contract for the purpose of showing that Beltramini made inconsistent statements. According to Plaintiffs, Beltramini relied upon a "falsified contract" to show the expenses incurred for the Peru v. Paraguay match, and they sought to impeach him with the "actual contract." Whatever merit this objection had below, Plaintiffs have forfeited it on appeal. They fail to explain how the district court erred, and the string of unexplained record citations they provide get us no closer to determining which documents are relevant to their argument. *See Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594 (5th Cir. 2023) ("A party forfeits an argument" by failing to "explain how the district court erred." (internal alterations and quotations omitted)).

Third, Plaintiffs contend that the district court erred in a pair of evidentiary rulings during the direct and cross-examination of Saris "Martin" Orellana, whose testimony concerned, among other things, the sale of tickets for soccer matches. When Orellana testified that the tickets he sold were complimentary, the district court permitted Beltramini to impeach him with text messages indicating that the tickets were consignment. And when Plaintiffs attempted to rehabilitate Orellana with what they say were pictures of text messages showing that the tickets were complimentary, the district court disallowed it. Plaintiffs argue that the district court erred in both directions. We disagree. The text messages Beltramini used for impeachment were properly authenticated when Orellana confirmed their authenticity, *see* FED. R. EVID. 901(b) (evidence can be authenticated by "[t]estimony that an item is what it is claimed to be"), and Plaintiffs point to nothing in the record that would support whatever error they think the district court made

with respect to the alleged pictures that they tried to admit. There is simply nothing in the record (or in the briefing) that can aid our review.

C

Plaintiffs next take aim at the district court's Rule 50(a) ruling granting Beltramini judgment as a matter of law on his breach-of-contract claim. Plaintiffs string together several reasons as to why they are excused from paying the full purchase price ($300,000) for Planet Futbol under the Business Sale Agreement. We find none of them persuasive.

Plaintiffs' first reason is that Beltramini anticipatorily repudiated the Business Sale Agreement by opening a bank account with the initials "PF" (the same initials as Planet Futbol), purportedly in violation of the Business Sale Agreement's noncompete clause. Plaintiffs do not explain how merely opening a bank account, without more, amounts to "commercial competition" under the noncompete clause. Nor do they dispute Beltramini's assertion that he never even used the account. The cases Plaintiffs cite confirm the tenuousness of their position. *See, e.g.*, *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[R]epudiation occurs when the promissor unequivocally disavows any intention to perform in the future."); *Sci. Mach. & Welding, Inc. v. FlashParking, Inc.*, 641 S.W.3d 454, 464 (Tex. App.—Austin 2021, pet. denied) ("Anticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." (internal quotation marks omitted)). Nothing of the sort occurred here.

Plaintiffs secondly blame COVID-19. "[B]ecause the entire country prohibited social events due to COVID-19," Plaintiffs say, "no soccer matches were conducted, frustrating the purpose of" the parties'

contemplated payment scheme. Plaintiffs also submit that COVID-19-related closures and shutdowns made it "impossible" to comply with the Business Sale Agreement's payment terms.

We disagree. The Business Sale Agreement required Plaintiffs to pay the full purchase price "no later than July 1, 2010, *notwithstanding*" the contemplated payment scheme, so the fact that the envisioned soccer matches never materialized does not excuse Plaintiffs from paying. Plaintiffs also fail to show how the social conditions caused by COVID-19 resulted in "the destruction or deterioration of a thing necessary for performance." *Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 65 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). There is, to be sure, a force majeure clause in the Business Sale Agreement, but as Plaintiffs acknowledge, it protects only Beltramini. We decline to use a common-law doctrine to supersede the parties' agreed-upon terms. *See id.* at 66 ("Generally, impracticability excuses a party's breach when the contract itself doesn't provide an escape clause.").

Taking a different tack, Plaintiffs argue that Beltramini sustained no damages from their breach of contract. Again, we disagree. Because Plaintiffs acknowledge that they did not pay the full purchase price, Beltramini did not realize the full benefit of his bargain. *See MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106 (Tex. 2023). The existence of a noncompete does not somehow zero out breach-of-contract damages, as Plaintiffs suggest without any authority. Perhaps in an implicit recognition that Beltramini did in fact sustain damages, Plaintiffs assert that Beltramini failed to mitigate them. We agree with the district court that this argument is both waived and without merit. Plaintiffs raised it for the first time after trial and they make no effort to show how Beltramini could have mitigated his damages or by how much. Texas law requires more. *See, e.g., Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth

2006, pet. denied) ("The party asserting failure to mitigate has the burden of proving facts showing lack of such mitigation and must also show the amount by which the damages were increased by failure to mitigate.").

D

In their penultimate issue, Plaintiffs complain about the district court's decision to award Beltramini his attorney fees. They argue that (1) Beltramini waived his right to fees under the Business Sale Agreement and (2) Beltramini's attorneys failed to segregate their fees. We disagree with the former but believe the latter may have merit.

Texas law provides that prevailing parties in breach-of-contract actions are entitled to attorney fees, TEX. CIV. PRAC. & REM. CODE § 38.001, but parties are free to contract around that statutory default, *see Mohican Oil & Gas, LLC v. Scorpion Expl. & Prod. Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi–Edinburg 2011, pet. denied). Plaintiffs argue that the parties accomplished just that in Article 14 of their Business Sale Agreement, in which "[e]ach Party agree[d] to be responsible for their own expenses or costs relating to or in connection with anything in this Agreement." Thus, according to Plaintiffs, Beltramini waived any right to attorney fees because "expenses or costs" encompasses attorney fees paid in connection with litigation over the contract.

This is a compelling argument, and one reasonably grounded in the plain language of the agreement,[5] but Texas caselaw demands "clear and specific" language to overcome a statutory entitlement to attorney fees under § 38.001. *Ferrari v. Aetna Life Ins.*, 754 F. App'x 266, 269–70 (5th Cir. 2018).

---

[5] *See* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 227 (3d ed. 2011) (entry on "costs and expenses" and defining "expense" as a "broader term" that refers to "an expenditure of money, time, labor, or resources to accomplish a result").

Under that standard, we have held that a contract must "specifically preclude" a litigant's "statutory claim to an award of attorney's fees under Section 38.001." *Tex. Nat'l Bank v. Sandi Mortg. Corp.*, 872 F.2d 692, 701 (5th Cir. 1989). Texas state appellate courts have followed suit. One has held that a party did not waive his statutory right to attorney fees because the contract did "not specifically reference Section 38.001," *Venture Cotton Co-op v. Freeman*, 395 S.W.3d 272, 276 (Tex. App.—Eastland 2013), *rev'd on other grounds,* 435 S.W.3d 222 (Tex. 2014), and another has held that a contract disclaiming liability "for attorney fees incurred" was "too general to apprise [the plaintiff] of what rights she is relinquishing, namely her statutory right to attorney fees under Chapter 38," *Bank of Am., N.A. v. Hubler*, 211 S.W.3d 859, 865 (Tex. App.—Waco 2006, pet. granted, judgm't vacated w.r.m.). The "clear and specific" standard is thus a demanding one, and Article 14 of the Business Sale Agreement—with its broad mention of "expenses and costs"—does not meet it.

Because Beltramini is statutorily entitled to his attorney fees for his breach-of-contract claim, notwithstanding Article 14 of the Business Sale Agreement, Texas law requires him to segregate his fees. "[F]ee claimants have always been required to segregate fees," the Texas Supreme Court has observed, "between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). While Beltramini is entitled to his fees for the breach-of-contract claim he brought against Plaintiffs, no statute or provision in the Business Sale Agreement entitles him to attorney fees for prevailing against Plaintiffs' fraud claims. Thus, unless the two sets of claims are "intertwined," *id.* at 314, Beltramini needed to segregate the fees associated with the breach-of-contract claims from the fees associated with the fraud claims.

Beltramini claims to have done so in his briefing, but, confusingly, he also says that the claims were "inexorably intertwined to the extent that it is impossible to distinguish the proper allocation of fees."[6] Beltramini's attorneys' affidavits echo the latter position, positing (among other things) that "[t]he facts [relevant to each claim] overlapped inseparably" and that Plaintiffs' theory of the case was "to claim that the amount on the contract was not due and owing because of the fraud and misrepresentations made to Guevara in the six soccer games." The Texas Supreme Court has rejected the notion, however, that "a common set of underlying facts" is sufficient to make claims "so intertwined that they need not be segregated." *Id.* at 313–14. And it is not clear to us that the affidavits' description of Plaintiffs' theory of the case is entirely accurate, at least about the intertwined nature of the claims at issue, given Plaintiffs' contentions that their performance was excused by Beltramini's various alleged breaches of the Business Sale Agreement rather than the fraud claims. *See* section C, *supra*.

We decline to take a definitive position on the issue because, despite the parties' arguments about it below, the district court did not address the segregation issue in its order awarding Beltramini his attorney fees. Thus, on the incomplete record before us, we cannot say whether Beltramini's attorneys properly segregated their fees in accordance with Texas law—or if they even needed to. We leave it to the district court to make those determinations in the first instance. *Cf. Utah v. Su*, 109 F.4th 313, 320–21 (5th Cir. 2024).

---

[6] Beltramini's briefing on this point could be understood as saying that the fees were segregated based on time spent litigating against the different parties below (*i.e.*, Mario Gonzalez versus Plaintiffs), and not segregated based on Plaintiffs' claims. But Beltramini's response is terse, and there is virtually no argument as to *why* there was no need to segregate the fees with respect to Plaintiffs' claims.

E

Finally, we address Plaintiffs' contention that the district court erred in its handling of the Business Sale Agreement's conditions precedent, both in the instructions to the jury and in responding to the jury's one and only question. The district court did not err.

Article 8 of the Business Sale Agreement—titled "Conditions Precedent—requires Beltramini to, among other things, "provide [Plaintiffs] with any and all information required so that [Plaintiffs] may step into the shoes of [Beltramini] for the proper operation of the Business." Plaintiffs allege that Beltramini failed to live up to that promise, and they blame the jury's finding otherwise on the district court's failure to provide the jury "a definition or guidance as to what constitutes a condition precedent." As with many of their other issues raised on appeal, they failed to preserve this one below, so we again review for plain error. *Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 309 (5th Cir. 2023).

And again, we discern none. It is at best unclear what difference a definition of "condition precedent" would have made to the jury's finding that Beltramini did not breach the Business Sale Agreement. The district court specifically provided to the jury Plaintiffs' theory of the breach-of-contract claim (*i.e.*, that they need not pay Beltramini due to his alleged failure to prepare them to take over Planet Futbol), which is essentially a more fact-based way of telling the jury precisely what Plaintiffs want: that a party "has no obligation to perform under the contract" when the other party "violates part of the contract." The Business Agreement itself, moreover, also provided a similar definition of conditions precedent. So, if any error resulted from the district court's failure to define "condition precedent," it was harmless in light of the instructions and evidence already given to the jury.

No. 23-20292

Plaintiffs bookend their belated objection about the jury instruction with an argument that the district court gave an improper response to the jury's question about conditions precedent. Plaintiffs did in fact preserve this specific objection below.[7] The jury's brief, two-hour deliberation was interrupted by only one question it asked regarding conditions precedent:

> Regarding purchase agreement Article 8, conditions precedent. We have a legal question with the phrase "before the Closing Date" in conjunction with a) iv). Is it expected that part iv) is really to be performed before the Closing Date?

In response to this question, the district court restated the language of Article 8, clause (a)(iv), and urged the jury to consider it in context of the entire agreement:

> Article 8(a)(iv) states that the seller will provide the buyer with any and all information required so that the buyer may step into the shoes of the seller for the proper operation of the business before the closing date. Consider this provision in the context of the entire agreement, including the provisions on effectuating an orderly transition.

According to Plaintiffs, the district court should have instead answered the jury's question with a simple "yes because Article 8 addresses conditions precedent." Beltramini offers little response to this argument. Nevertheless, we have no trouble dispensing with it. The district court could have certainly adopted Plaintiffs' proposed answer, but Plaintiffs fail to explain how the district court's preferred response was erroneous. The response

---

[7] In his briefing, Beltramini seems to conflate Plaintiffs' argument that the district omitted a conditions-precedent instruction with Plaintiffs' argument that the district court improperly answered the jury's question, leading him to incorrectly suggest that Plaintiffs failed to preserve either. The district court plainly noted Plaintiffs' objection to its answer on the record.

acknowledged that the obligation of (a)(iv) did indeed have to be completed "before the closing date," and it was not legally erroneous to tell the jury that it had to consider Article 8, clause (a)(iv), "in the context of the entire agreement." *See, e.g.*, *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, (Tex. 2015) ("No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole."). We therefore reject Plaintiffs' last point of error.

## III

In sum, we AFFIRM the district court's judgment below but VACATE the award of attorney fees to Beltramini and REMAND for further proceedings consistent with this opinion.